FILED

2011 Mar-22  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

IN RE:

RANDALL CURTIS BULLOCK,                    BANKRUPTCY COURT CASE
                                           NO.: 09-84300


        DEBTOR.


_____


RANDALL CURTIS BULLOCK,

        APPELLANT,
                                           CASE NO.: CV-10-J-1905-NE
v.

BANK CHAMPAIGN, NA,                        No.: AP -10-80003

        APPELLEE.

## <u>MEMORANDUM OPINION</u>

This matter is before the court as an appeal from the Bankruptcy Court, pursuant to 28 U.S.C. § 158.  The parties have filed appellate briefs, which the court has reviewed.  The court finds, in accordance in Fed.R.Bankr.P. 8012, that the facts and legal arguments are adequately presented in the briefs and record and the decisional process will not be significantly aided by oral argument.

## Factual Background

The facts of this appeal are not in dispute.  It arises from an adversarial proceeding in which summary judgment was granted in favor of appellee Bank Champaign and against the debtor/appellant, Randall Bullock ("Bullock").  Bullock at one time was trustee of the Curtis Bullock Trust No. 2, created by Bullock's father as an irrevocable living trust.  The only asset was the proceeds of a life insurance policy on the life of the father.  Bullock was named trustee and he and his four siblings were the beneficiaries.

Pursuant to trust documents, the trustee could borrow against the policy to provide funds to pay the premiums, or to satisfy any request of a beneficiary for withdrawal of funds.  Bullock borrowed against the cash value of the policy three times.  The first loan was at the request of the father to benefit his wife (Bullock's mother), in the amount of $117,545.96, to repay a debt she owed to the father's business.  The second loan was to Bullock and his mother, for $80,257.04, to purchase Certificates of Deposit.  Later, these funds were used toward the purchase of a garage fabrication mill in Ohio.  A third loan for $66,223.96, again to Bullock and his mother, was used with other funds to purchase real estate.  Bullock alleges that the loans were repaid in full with six percent (6%) interest, but an Illinois trial court ruled the trust made no profit from the loans.

2

The Illinois case arose in 2001 when Bullock's two brothers filed suit asserting Bullock breached his fiduciary duty and that any profits earned by Bullock and his mother should be relinquished to the trust. The Illinois court held that Bullock was liable for self-dealing and owed the trust $250,000.00 for benefits he received and $35,000.00 in attorney fees. It also held that the loans were not for either of the two permissible purposes in the trust documents. It found the loans were the result of self-dealing, because each time the money went to entities in which Bullock had an interest. That court declared a constructive trust on Bullock's assets, plus several businesses in which Bullock had an interest, and on his interest in the trust. The Illinois court further named Bank Champaign, NA ("Appellee") as trustee.

According to Bullock, the Illinois court ordered that the defendant in that case, namely Bullock, having an interest in the Springfield mill had to execute a mortgage on the property in favor of the trustee. Appellee has held the assets of the constructive trust since that time without making an effort to liquidate the assets to satisfy the court judgment, and has refused to let Bullock sell or lease the property to satisfy the judgment.

Bullock then filed a Chapter 7 bankruptcy action, seeking to discharge solely this debt. Appellee filed an adversarial proceeding ("AP") against Bullock, alleging that Bullock, in his previous role as trustee of the Trust, committed acts of defalcation

3

while acting in a fiduciary capacity.  Such allegations had been raised in the state court action in Illinois, and were the basis of the judgment in favor of other heirs of the trust and against Bullock.  Appellee argued in the adversarial proceeding that the debt created by the Illinois judgment was non-dischargeable, and the Bankruptcy court agreed.  This issue of the dischargeability of the debt created by the Illinois judgment is the sole issue before this court on appeal.

Bullock's two sisters both asked the Bankruptcy court to release Bullock from the debt because the litigation has been going on for fourteen years and needed to stop.  Bullock had produced a buyer for one of the properties, but Appellee refused to allow the sale.  Because it is the trustee, and the trust holds a constructive trust on the assets, nothing may be sold without Appellee's approval.  Meanwhile, the properties are essentially abandoned and uninsurable.

In the adversarial proceeding before the bankruptcy court, Appellee argued that Bullock was collaterally estopped from raising any issues raised in the Illinois action. The bankruptcy court assumably agreed, ruling on motion for summary judgment that the Illinois court found fraud and defalcation and that Bullock was collaterally estopped from relitigating such issues.

4

## Standard of Review

This court functions as an appellate court for the decisions of the United States Bankruptcy Courts. *In re Sublett,* 895 F.2d 1381, 1383 (11th Cir.1990). This court reviews the Bankruptcy court's findings of fact under the clearly erroneous standard of review and conclusions of law under the de novo standard of review. *Whiting-Turner Contracting Co. v. Electric Machinery Enterprises, Inc*., 2006 WL 1679357, \*1 (M.D.Fla.2006). De novo review requires the court to make a judgment "independent of the bankruptcy court's, without deference to that court's analysis and conclusions." *In re Sternberg*, 229 B.R. 238, 244 (S.D.Fla.1998); citing *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.1984). The proper construction of the Bankruptcy Code by the bankruptcy court or by the district court is a matter of law; accordingly, such interpretations are subject to de novo review. *In re Colortex Industries, Inc.*, 19 F.3d 1371, 1374 (11th Cir.1994); *In re Taylor*, 3 F.3d 1512, 1514 (11th Cir.1993).

Under Fed.R.Civ.P. 56(c), made applicable to adversary proceedings and contested matters in bankruptcy cases by Fed.R.Bankr.P. 7056 and 9014, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

5

matter of law." *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334 (11th Cir.2001);

citing Fed.R. Civ.P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct.

2548, 2552, 91 L.Ed.2d 265 (1986). This court's review of a bankruptcy court's grant

of summary judgment is de novo. *See In re Optical Technologies, Inc.*, 246 F.3d at

1334; *In re Walker*, 48 F.3d 1161, 1163 (11th Cir.1995). De novo review requires the

court to make a judgment independent of the bankruptcy court's, without deference

to that court's analysis and conclusions. *In re Piper Aircraft Corp.*, 244 F.3d 1289,

1295 (11th Cir.2001), citing *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th

Cir.1984).

## Legal Analysis

As stated above, the sole issue before this court is whether the Bankruptcy

court erred in holding the debt created by the Illinois court judgment was non-

dischargeable. *See* appellant's brief at 2, appellee's brief at 1. Specifically, Bullock

asserts the Bankruptcy Court erred in holding that Bullock committed an act of fraud

and/or defalcation pursuant to 11 U.S.C. § 523(a)(4), or that this issue was previously

litigated and adjudicated in the Illinois action.[1] He further asserts that the Bankruptcy

---

[1]The Bankruptcy court can apply collateral estoppel on the issue of liability or the issue of liability and damages to the extent those issues were litigated in a prior action, but the Bankruptcy court must still determine on the basis of those proven facts whether those acts come within the dischargeability sections of the Bankruptcy Code. *In re Lowery,* 440 B.R. 914, 923 (Bkrtcy.N.D.Ga.2010).

6

court failed to consider his affirmative defenses.  The appellee responds that the Bankruptcy court correctly determined it was collaterally estopped from reconsidering the Illinois state court judgment.

Pursuant to section 523(a)(4) of the Bankruptcy Code, any debt arising from "fraud or defalcation while acting in a fiduciary capacity" is excepted from discharge. 11 U.S.C. § 523(a)(4).  The parties do not dispute that Bullock was, at all times relevant, acting in a fiduciary capacity.  Thus, the court considers whether the debt created by the Illinois court judgment arose from fraud or defalcation.  The exception from dischargeability created by § 523(a)(4) is construed narrowly.  *See In re Fernandez-Rocha*, 451 F.3d 813, 816 (11ᵗʰ Cir. 2006).  Although Bullock defines "defalcation" to require a failure to produce funds, the Eleventh Circuit has not recognized the same to be the only definition of "defalcation."  Examining this very issue, the Court held:

> Even if a fiduciary relationship exists prior to the act that created the debt, the next question under § 523(a)(4) is whether there was a "defalcation" while acting in a fiduciary capacity. In *Quaif*, this Court further explained that " '[d]efalcation' refers to a failure to produce funds entrusted to a fiduciary," but that "the precise meaning of 'defalcation' for purposes of § 523(a)(4) has never been entirely clear." *Id*. at 955. *Quaif* observed that the best analysis of "defalcation" is that of Judge Learned Hand in *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937), in which "Judge Hand concluded that while a purely innocent mistake by the fiduciary may be dischargeable, a 'defalcation' for purposes of this statute does not have to rise to the level

7

of 'fraud,' 'embezzlement,' or even 'misappropriation.' " *Quaif,* 4 F.3d at 955 (citing *Central Hanover*, 93 F.2d at 512). ***Indeed, "[s]ome cases have read the term even more broadly, stating that even a purely innocent party can be deemed to have committed a defalcation for purposes of § 523(a)(4).*** " *Id.* (emphasis added).

*In re Fernandez-Rocha*, 451 F.3d at 817 (quoting *Quaif v. Johnson*, 4 F.3d 950 (11th Cir.1993)).  Furthermore, the non-dischargeability language of § 523(a)(4) does not require defalcation, the statute addresses fraud as well. *See e.g., Hosey v. Hosey (in re Hosey)*, 355 B.R. 311, 321 (Bankr.N.D.Ala.2006).

Bullock's arguments otherwise arise from a linguistic misinterpretation of the term "failure to produce funds entrusted to a fiduciary."  Even though Bullock repaid the funds, this is not the same as never having taken them out of the trust in the first place.  Rather, defalcation includes the fiduciary's failure to account for funds due to any breach of duty whether it was intentional, willful, reckless, or negligent. Proof of fraud is not needed. *See In re Moreno*, 892 F.2d 417, 421 (5th Cir.1990); *In re Wang*, 247 B.R. 211 (Bankr.E.D.Tex.2000); *In re Storie*, 216 B.R. 283 (10th Cir.1997).

More specifically, "[a] defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement."  *In re Moreno*, 892 F.2d at 421, citing L. King, 3 Collier on Bankruptcy ¶ 523.14, at 523-93 to 523-95 (15th ed. 1988), *quoting Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2nd Cir.1937) (L. Hand,

8

J.). Bullock's fiduciary duty "encompassed, at least, a responsibility not to lend [the trust]'s money to himself or corporations controlled by him on less than an arms-length basis." *In re Moreno,* 892 F.2d at 421 (citing *Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707, 719 (5th Cir.1984); *International Bankers Life Insurance. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963).).

In consideration of the foregoing, the court finds nothing erroneous in the Bankruptcy court's determination that the Illinois state court judgment was non-dischargeable pursuant to 11 U.S.C. § 523 (a)(4).   However, even if this court disagreed with the determination of the Bankruptcy court and the Illinois court concerning the legitimacy of the loans to Bullock, this court finds the Bankruptcy court further was correct in its finding that it was collaterally estopped from reopening this issue.

A court's application of estoppel determinations made originally by a bankruptcy court presents questions of law reviewed de novo.  *In re Piper Aircraft Corp.*,  244 F.3d 1289, 1295 (11th Cir.2001), citing *Richardson v. Miller*, 101 F.3d 665, 667-68 (11th  Cir.1996); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.1990).  Collateral estoppel prevents the relitigation of issues already litigated and determined by a valid and final judgment in another court. It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in

9

bankruptcy court. *In re Bilzerian,* 100 F.3d 886, 892 (11ᵗʰ Cir.1996), citing *Grogan*

*v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755

(1991); *Hoskins v. Yanks (In re Yanks)*, 931 F.2d 42, 43 n. 1 (11ᵗʰ Cir.1991).  For

collateral estoppel to apply, the following elements must be present:

> (1) The issue in the prior action and the issue in the bankruptcy court are identical;
> (2) The bankruptcy issue was actually litigated in the prior action;
> (3) The determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and
> (4) The burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action.

*Bilzerian,* 100 F.3d at 892 citing *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*,

62 F.3d 1319, 1322 (11ᵗʰ Cir.1995) (citation omitted).

As set forth above, the court has already found that the issue of the propriety

of Bullock's actions in handling the trust monies was before both the Illinois court

and the Bankruptcy court.  The issue in both cases, namely the question of breach of

fiduciary duties, was actually litigated in the Illinois action.  As the only issue before

the Illinois court, it was a critical and necessary part of the judgment in that action.

In the Bankruptcy court, Bullock challenged the finding that his actions were within

the definition of fraud or defalcation.  That court rendered its decision on the non-

dischargeability of the debt based on the Illinois court's finding that Bullock breached

his fiduciary duties.  Therefore, the fourth element for finding Bullock collaterally

estopped from relitigating the Illinois determination, is also satisfied.  The court finds no error in the Bankruptcy court's finding of collateral estoppel barring Bullock from reopening the finding of breach of fiduciary duties.

Bullock next complains that the Bankruptcy Court failed to consider his affirmative defenses.  He asserts that the Appellee has wrongfully and unreasonably refused to allow his assets to be used toward the satisfaction of the state court judgment.  Appellant's brief, at 11, 19.  Because the Illinois court awarded a constructive trust over property of Bullock, Bullock is unable to liquidate those assets without the approval and cooperation of Appellee.  According to Bullock, the Appellee has wrongfully withheld this consent, in violation of its fiduciary duties to the beneficiaries of the trust (which includes the Appellant). *Id.*, at 19.  Furthermore, Bullock is correct that the Bankruptcy court failed to consider the effect of Appellee's refusal to allow Bullock to liquidate the assets he has to satisfy the debt it deemed non-dischargeable.

The Appellee responds that the fact that the state court granted the Trust a security interest in the debtor's property does not create an affirmative obligation on the Trust to liquidate that collateral.  Appellee's response, at 15.  Naturally, Bullock asserts without liquidating the collateral, he cannot satisfy the judgment.  Without the consent of the Appellee, he cannot liquidate the collateral.  The court finds the parties

11

to this action have created a scenario akin to trying to determine whether the chicken or egg came first.

Unfortunately, it further raises questions of the propriety of Appellee's actions since obtaining the constructive trust, not an issue of the enforceability or dischargeability of the judgment. Given the conclusion that Bullock continues to owe this debt to the Trustee, what obligation does the Appellee, as Trustee, have to replace those funds into the trust through the most expedient means possible? Surely, when the Illinois Court permitted Trustee a constructive trust on Bullock's assets, it was not for the purpose of a lien in perpetuity. Rather, the sale of collateral to repay a debt is the general purpose for granting a security interest in collateral in the first place. If the collateral is sold and the debt repaid, that the lienholder no longer needs the security interest. Preventing the sale of the collateral perpetuates the lien but prevents payment of the debt. Even the case cited by Appellee in support of its statement that "the only way in which a money judgment can be satisfied is by payment in money unless the parties agree otherwise" (Appellee brief at 14), recognizes that holding collateral hostage in perpetuity is impermissible. *See Heller v. Lee*, 474 N.E. 2d 856, 858 (Ill.App.Ct.1985). In *Heller*, the court stated

> The plaintiffs contend that they took the property as security for eventual cash payment of the judgment. We agree. But, as matters now stand, the plaintiffs can sit on the property indefinitely and institute

12

supplemental proceedings to recover the rest of the judgment. Thus the plaintiffs have the use and enjoyment of a valuable piece of property while the defendants, who put the property up as bond expecting it to satisfy the judgment, are not only deprived of the property, but may also be compelled to dig even deeper in order to pay the judgment. Such a result is inequitable. The plaintiffs have received a windfall at the defendants' expense. If, as the plaintiffs contend, the transfer of the real estate was intended to secure the judgment, then by taking the deed, the plaintiffs acquired only a lien. Rather than proceed against the defendants to recover the judgment, the equitable solution is for the plaintiffs to foreclose on their lien by selling the property.

We are guided in this result by the maxim that equity regards as done that which ought to be done. The parties intended the property to secure the judgment. Therefore, the property should be used to satisfy the judgment.

*Heller v. Lee,* 474 N.E.2d 856, 858 (Ill.App.Ct.1985).  More recently, another Illinois

court also held

Those contractual rights as to the collateral, however, are limited by equitable principles, which do not allow a creditor to forever sit on collateral, seek alternative relief, and have the use of the collateral, which the debtor expected would satisfy the obligation, to the debtor's hardship. *See Heller v. Lee*, 130 Ill.App.3d 701, 703, 85 Ill.Dec. 896, 474 N.E.2d 856, 858 (1985); *see also* Restatement (Third) of Suretyship & Guaranty § 51(2)(b) (1996) (a creditor may be required to liquidate collateral to satisfy a debt when to do otherwise would cause undue hardship).

*International Supply Co. v. Campbell*, 907 N.E.2d 478, 488 (Ill.App.Ct.2009).

13

While this court is convinced Appellee is abusing its position of trust by failing to liquidate the assets, this issue is not properly before this court, but rather should brought by Bullock in an action in Illinois to consider the malfeasance of the trustee.

## CONCLUSION

Having considered the arguments of the parties, the court finds that the decision of the Bankruptcy Court is due to be affirmed.  The court therefore **ORDERS** that the Order of the Bankruptcy Court will be **AFFIRMED** by separate Order.

**DONE** and **ORDERED** this the 22nd day of March, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

14